No. 35,996

LUELLA SMITH, *Appellee*, v. CITY OF KANSAS CITY, *Appellant*.

(146 P. 2d 660)

214

Opinion filed March 4, 1944.

*William H. Towers,* of Kansas City, argued the cause, and *Alton H. Skinner, James H. Barnes* and *Joseph A. Lynch,* all of Kansas City, were on the briefs for the appellant.

*A. J. Herrod,* of Kansas City, argued the cause for the appellee.

The opinion of the court was delivered by

PARKER, J.: In this action plaintiff seeks to recover damages against the city of Kansas City for personal injuries alleged to have been sustained by her when she stepped upon the lid of a manhole in a catch basin constructed and maintained by the city. The defendant's demurrer to plaintiff's evidence was overruled and it elected to stand on such demurrer without offering any evidence in support of defenses set forth in its answer. The appeal is from the order overruling the demurrer to the evidence and from the judgment rendered by the trial court upon the verdict returned by the jury in favor of plaintiff.

Since a proper determination of the issues depends upon the sufficiency of the evidence to establish liability of the defendant city it will be necessary to state the controlling facts at some length.

Many years ago the street railway company obtained a franchise from the city of Kansas City and proceeded to lay tracks on its private right of way in an easterly and westerly direction, over which it operated its streetcars. The franchise provided that if at any 'time the city desired any part of the right of way for use as a street or streets, the company would waive all claims for damages by reason of the taking thereof, and when so taken or otherwise acquired the general provisions of the franchise as to paving and all other matters as to the improvement of streets would apply. Some time later the city took over and occupied a twelve-foot strip of the right of way on each side of the streetcar track, also an additional portion thereof lying adjacent to and directly south of the south

twelve-foot strip so appropriated on which to construct and maintain the catch basin herein referred to. The record is not entirely clear on the point but it appears after such action the city used the twelve-foot strip on each side of the railroad track as a street and that at the time of the accident here in controversy, and for a long time prior thereto, such street was known as Stewart avenue and also Chelsea Park trafficway. The record is silent as to the condition of the street and the manner in which the city maintained it until about ten years prior to the date of the institution of the instant action. At that time the city paved the street on each side of the streetcar track and in addition constructed the catch basin at the southwest corner of the intersection of Stewart avenue and an alley running north and south between Twelfth and Thirteenth streets, which streets also run in the same direction and intersect Stewart avenue which runs in an easterly and westerly direction, and continued to maintain such street and catch basin from that time up to and including the date of the accident. The space between the streetcar tracks in the center of Stewart avenue is not paved nor is there any sidewalk on either the south or north sides of such street for use by pedestrians.

The catch basin as constructed and maintained by the city, although not accurately described, either in the pleadings or in the evidence, can be depicted from photographs which were a part of the record, as a solid concrete surface, place, or slab, approximately 4 to 6 feet in length and 2 to 3 feet in width, located adjacent to the south curbing of the street and flush with such curbing both perpendicularly and horizontally, in the center or middle of which surface was located a round manhole covered by what is commonly known as a manhole cover or lid. It is conceded such catch basin was constructed for drainage purposes.

On the evening of October 5, 1941, at about 9:30 the plaintiff and her sister who had been visiting a neighbor in the community were returning to plaintiff's home. They were walking east on the paved portion of Stewart avenue between the streetcar track and the south curb line close to the south curbing. Shortly before they reached the intersection of the alley and the avenue their attention was called to an automobile approaching from the west in the same direction they were traveling and just as such vehicle was about to reach them, and to avoid being hit by it, the plaintiff stepped from the paved portion of the street upon the curbing and then onto and

upon the concrete surface of the catch basin. While walking across this surface she stepped upon the lid covering the manhole, the top of which was level with the other surface portions of the slab. The lid tilted as she placed her weight upon it so that her left foot and leg slid from the surface into the manhole where she sustained the injuries which are the basis of the action involved in this appeal.

At the trial plaintiff's evidence in addition to showing the facts heretofore related detailed the manner and circumstances under which plaintiff was injured, the extent of her injuries and the defective condition of the catch basin together with the length of time it had existed and the knowledge of the city regarding it. A narration of all facts disclosed by such evidence will not be required but such as are important will be more specifically referred to as we proceed with the consideration of this appeal.

Appellant's demurrer to the evidence was based upon three grounds, each of which is urged here in support of its contention the overruling of its demurrer was erroneous. In our consideration of the questions presented it must be remembered the rule to be followed is that recently stated in *Jones v. McCullough*, 148 Kan. 561, 83 P. 2d 669:

"In testing the sufficiency of evidence as against a demurrer, the court shall consider all of plaintiff's evidence as true, shall consider that favorable to plaintiff, together with all reasonable inferences to be drawn therefrom and disregard that unfavorable to plaintiff, and shall not weigh any part that is contradictory, nor weigh any differences between his direct and cross-examination, and, if so considered, there is any evidence which sustains the plaintiff's case, the demurrer should be overruled." (Syl. ¶ 1.)

And reiterated in *Picou v. Kansas City Public Service Co.*, 156 Kan. 452, 134 P. 2d 686; *Roddy v. Hill Packing Co.*, 156 Kan. 706, 137 P. 2d 215; *Gilmore v. Kansas City*, 157 Kan. 552, 554, 142 P. 2d 699, and *Waugh v. Kansas City Public Service Co.*, 157 Kan. 690, 696, 143 P. 2d 788.

It is first urged that the demurrer should have been sustained because the catch basin causing the injury was maintained not as a part of the street or sidewalk which pedestrians traveled but as a part of the sewer system and hence was a governmental function, by reason of which the city was relieved of any liability for any negligence in the maintenance thereof. In support of this contention appellant cites many well-considered cases, including *Foster v. Capital Gas & Electric Co.*, 125 Kan. 574, 578, 265 Pac. 81, where this court in its opinion said:

"The construction and maintenance of a sewer, in our opinion, is governmental as distinguished from ministerial or proprietary. We believe it the better and more reasonable rule to hold that (except in injuries arising from defects in streets or highways), the municipality is not liable when engaged in performing governmental functions." (p. 578.)

The rule is a sound one and has been followed by us in more recent decisions. The trouble with appellant's position is that the facts as disclosed by the evidence do not bring this case within the rule announced in those decisions.

The catch basin where appellee suffered her injury was constructed by the city as a part of the street on land which it had appropriated from the right of way of the street railway company for use as a street. The concrete slab where the manhole was placed was adjacent to it. A portion thereof served as a part of the street curbing itself and was used by the city for that purpose. It was put there originally and at the time of the accident was maintained by appellant, not for sewer purposes as that term is commonly used, but for draining off surplus water and disposal of debris which of a certainty would accumulate on a street constructed as was this one. True enough, it was connected up with the appellant's sewer system but in our opinion that fact cannot be held to overcome the circumstance that it was placed and remained there as an incident to the proper maintenance of the street itself. The manner in which it was constructed, its proximity to the street, its use as a portion of the street curbing and other conditions herein referred to make it impossible for us to say where its use for street purposes ceased and when its function as a sewer began. That a city rests under a postive legal duty to keep its streets, sidewalks and crosswalks in a condition reasonably safe for their intended use is too well established to require extended citations. (See *Blakenship v. City of Caney*, 149 Kan. 320, 87 P. 2d 625; *Hack v. City of Pittsburg*, 145 Kan. 383, 65 P. 2d 580; *Marley v. Arkansas City*, 135 Kan. 688, 11 P. 2d, 704; *Rose v. City of Gypsum*, 104 Kan. 412, 420, 179 Pac. 438.) In *Crawford v. City of Wichita*, 141 Kan. 171, 39 P. 2d 911, this court held that a city was liable for injuries sustained by reason of a defective manhole located in a street over a storm sewer. Under the circumstances of this case the fact the catch basin was not in the center of the street, but was located adjacent thereto on land owned by the municipality does not alter the rule and the city was as liable for its defective condition as if it had been located in the center or some other part

of the street. It follows the trial court's ruling on the first ground of the demurrer was proper.

Since we hold the catch basin was in fact a subordinate part of the street, and an incident to its proper maintenance it becomes unnecessary for us to discuss the duty and liability of the city as to conditions beyond the limits of the street proper which affect the safety of pedestrians. It is, however, interesting to note there may be situations where the municipality is liable for dangerous conditions existing adjacent to its public streets and thoroughfares even though such conditions may have been caused by private persons and without affirmative action on the part of such municipality. (*Kaiser v. City of Wichita,* 150 Kan. 103, 90 P. 2d 1109; *Durst v. Wareham,* 132 Kan. 785, 297 Pac. 675; see, also, 25 Am. Jur. 814, § 531.)

The next contention is the demurrer should have been sustained because the city had no notice, either actual or constructive, of the existence of any defective condition of the catch basin, the manhole or the covering thereof. That the city must have actual or constructive notice of the defective condition of a street cannot be disputed. (See *Blankenship v. Kansas City,* 156 Kan. 607, 135 P. 2d 538, and *Durst v. Wareham,* supra.) What did the evidence disclose? There was an abundance of testimony to the effect the injuries resulted when appellee stepped upon the manhole covering, also that such covering was defective. As to notice on the part of the appellant there was evidence to the effect the defective condition of the lid had existed for as long a time as two years prior to October 5, 1941, and that many persons knew of the condition. Passing that, one witness, S. W. Austin, stated he had lived in the vicinity since 1923 and that to his recollection there had never been a solid lid on the manhole. Irrespective of the effect to be given the other testimony as to notice, this statement, giving it the benefit of inferences to which it is entitled on demurrer, must be construed as meaning that the catch basin and the lid on the manhole was in a defective condition when first constructed. The general rule is that where a defect in a street was caused by a city or by those for whose acts it is responsible, no proof of notice to the city of the defect is required, such notice being implied. (*Gilmore v. Kansas City,* 157 Kan. 552, 142 P. 2d 699.) Therefore, the overruling of the demurrer on the second ground urged by the appellant was proper.

Lastly, appellant insists the demurrer was good because the evi-

dence showed appellee was guilty of contributory negligence as a matter of law. There is small merit in this contention. This court has held the question of a plaintiff's contributory negligence, when from the evidence it is reasonably open to debate or one on which reasonable minds might differ, is one of fact for the jury and a demurrer to the evidence is properly overruled. (*Billings v. City of Wichita*, 144 Kan. 742, 62 P. 2d 869.) Here plaintiff testified that she looked before stepping upon the manhole cover which was level with the surface of the concrete slab and it showed no signs of being loose. This testimony was undisputed and we cannot, in the light of the rule just stated, find any reason for holding the appellee was guilty of contributory negligence as a matter of law.

In holding the demurrer in its entirety was properly overruled it must be remembered we have not here had any opportunity to pass upon questions of fact considered by the jury as to whether the street and catch basin was kept in a reasonably safe condition for use, whether defects existed and if so were so discernible as to call for repairs, whether the city actually had notice, actual, constructive or implied, or whether the evidence showed appellee was guilty of contributory negligence. The appellant stood upon its demurrer to the evidence and under the rule we have been limited to the question of whether there was any evidence to establish a cause of action in favor of appellee and against appellant.

Appellant's next contention is the jury because of passion and prejudice disregarded the instructions of the trial court. Particular reference is made to instructions Nos. 7 and 9. Instruction No. 7 advised the jury as to the manner in which it should determine whether the city used the proper degree of care in maintaining the catch basin. In instruction No. 9 it was told the circumstances under which a municipality was required to inspect its streets, including places in close proximity thereto, in order to keep them from becoming dangerous to the traveling public, and that there was no positive duty to inspect the catch basin merely because it was in close proximity to the street unless it found such place could reasonably be expected to be used by the public as a part of the street. The fact the jury found in favor of appellee can in no sense be taken as an indication it disregarded either of the instructions referred to. The most that can be said for appellant's claim is that by its verdict the jury failed to fix liability in line with appellant's theory of how the case should be determined.

Finally, appellant contends the verdict is excessive. Summarized, its argument is the appellee's injuries were trivial, she made no effort to procure medical care to alleviate her pain and suffering and she did nothing toward seeking work other than that in which she had been engaged, to mitigate her damages. All these arguments might well have been submitted to the jury for its consideration and had appellant seen fit to offer evidence on such questions they might have been persuasive. However, it did not elect to pursue that course. All the jury had before it was the undisputed testimony of the plaintiff, showing: the accident injured her spine, dislocated her knee and bruised her leg; prior thereto (Oct. 5, 1941) she had been engaged in the dressmaking business earning $10 per week; since, and up to the time of trial (May 11, 1943), she had been unable to operate a sewing machine; after, she was in bed for three weeks and on crutches for a month or so; subsequently, her nerves went to pieces, she had continuous pains in her back and knees, her sleep was broken, she had nervous spells and lay awake at night with pains in her leg. In addition the physician and surgeon who treated her stated that because of her age the injuries were permanent. In the face of all this undisputed evidence a statement the jury was influenced by passion and prejudice in returning a verdict of $3,000, the amount prayed for in the petition, is not justified, and appellant asks too much of this court when it insists the order of the trial court in overruling the motion for a new trial should be reversed and a new trial granted on the ground the verdict was excessive.

It may well be the appellant could have improved upon its present situation by the introduction of evidence in refutation of that offered by appellee but that was a matter for it to determine in the first instance, before it elected to rely upon its demurrer to the evidence. On appeal this court will not indulge in speculation as to what might have been the result had a litigant seen fit to pursue a different course of procedure during the trial nor will it permit subsequently developed errors or mistakes in such procedure to be urged as a circumstance extenuating the force and effect of a verdict returned by a jury and approved by the trial court after consideration of a motion for new trial.

The judgment is affirmed.