No 48,137

KARNES ENTERPRISES, INC., *Appellee* (Plaintiff), v. JOE QUAN and MAE QUAN, *Appellants* (Defendants), v. DORRENCE KARNES, *Appellee* (Third-Party Defendant).

(561 P. 2d 825)

Opinion filed March 5, 1977.

*William Wagner,* of Deines and Wagner, of WaKeeney, and *E. Lael Alkire,* of Alkire, Clausing, Wilkinson, and Wilson, of Wichita, argued the cause, and were on the brief for the appellants.

*Allen Shelton,* of Clark and Shelton, of Hill City, argued the cause, and was on the brief for the appellee Karnes Enterprises, Inc.

*Christopher A. Randall,* of Turner and Hensley, Chartered, of Great Bend,

argued the cause, and *Raymond L. Dahlberg,* of the same firm, was with him on the brief for the appellee third-party defendant Dorrence Karnes.

The opinion of the court was delivered by

PRAGER, J.: This is an action brought by the lessor of a restaurant against the lessee to cancel the lease, to recover possession of the leased premises, to recover rentals due and unpaid, for a restraining order, for an accounting, and to recover punitive damages. The plaintiff-appellee, Karnes Enterprises, Inc., is the lessor and owner of the leased premises. The president and principal stockholder of Karnes Enterprises, Inc. is the third party defendant-appellee, Dorrence Karnes. The defendants-appellants are Joe Quan and his wife, Mae Quan, the lessees and operators of the restaurant business.

Most of the essential facts in the case are not in dispute and are as follows: Karnes Enterprises is the corporate owner and operator of the Wheel Motel located in Trego county, Kansas. Located on the Wheel Motel property is a restaurant which has been operated for a number of years under the name of Wheel Restaurant. In April of 1970 Karnes Enterprises leased the restaurant business to the Quans. The lease agreement called for a monthly rental payable to the lessor in an amount equal to ten percent of the gross sales of the restaurant, less sales tax. The gross sales and the rentals to be paid to the lessor have been computed by the Quans from the cash register readings and records of the Wheel restaurant during the period of the lease. In the summer of 1973 Dorrence Karnes discovered in the restaurant's trash container sales tickets from the restaurant business which apparently had not been run through the restaurant cash register so as to be included in the gross sales. On further investigation Dorrence Karnes discovered that the cash register readings were being "rolled back" so as to reflect a less amount of gross income than was actually received by the Quans. Karnes concluded that the Quans as lessees had falsely reported gross sales to Karnes Enterprises and thus had failed to pay the full rentals owing to the lessor. During the following months of 1973 Karnes continued to collect additional sales tickets from the restaurant trash barrel and obtained additional readings from the restaurant cash register which in the opinion of Karnes confirmed that the Quans had not been reporting all of the gross sales to the lessor, thus denying the lessor rentals which were properly due. These circumstances brought about the filing of this action by Karnes Enterprises against the Quans.

On February 1, 1974, Karnes Enterprises, Inc. as plaintiff filed this action setting forth in its petition the relationship of the parties, the lease of the restaurant business, and the provisions of the lease which required a monthly rental to the lessor based upon ten percent of the gross sales, less sales tax. The petition alleged that the Quans as lessees had falsely and fraudulently failed to report the true income of the restaurant and thus had failed to pay rentals to the lessor in full. The petition further alleged that because of the fraudulent actions of the defendants the plaintiff had been required to hire accountants to construct the true gross income and rental figures and that plaintiff was entitled to recover judgment against the defendants for at least the sum of $29,857.65 and rentals for all subsequent months until the lease is terminated. It is further alleged that the nonpayment of rentals was intentional and fraudulent and that the plaintiff is entitled to judgment in the sum of $30,000 as punitive damages. The petition prayed for judgment canceling and terminating the lease, possession of the restaurant premises, an accounting of all amounts received by the lessees from cigarette vending machines located on the premises, and a restraining order to prevent the defendants from access to their safety deposit boxes or disposing of their certificates of deposit or savings accounts. At the time the case was filed a restraining order as requested was served upon the Quans. At that time Dorrance Karnes, acting on behalf of Karnes Enterprises, Inc., took possession of the restaurant.

On February 28, 1974, the defendants Quan filed their answer, counterclaim, and third-party petition. In their answer the Quans admitted the lease arrangement but alleged that all sums due as rentals had been paid in full and generally denied that the plaintiff was entitled to any relief. The gist of the Quans' counterclaim against Karnes Enterprises and the third-party petition against Dorrence Karnes was that there was no reasonable basis for the claim against the Quans; that Karnes Enterprises and Dorrence Karnes in filing the petition had acted wrongfully, willfully, and maliciously, and that Quans should be awarded judgment against Karnes Enterprises and Dorrence Karnes for damages in the total amount of $22,400 for loss of business earnings and denial of access to their property, and punitive damages for their embarrassment and damage to their reputations. Karnes Enterprises and Dorrence Karnes filed pleadings denying these allegations.

In April of 1974 the court denied the Quans' demand for a jury

trial. In January of 1975 a motion filed by the Quans to reconsider the demand for a jury trial was again denied by the trial court. The case then proceeded to trial to the court sitting without a jury. The trial was hotly contested. Each of the parties called as witnesses certified public accountants who attempted to reconstruct the true gross sales of the restaurant business and the rentals due. The accountings were long and complicated. Numerous sales tickets, cash register tapes, sale summary books, schedules of cash register sales, and estimates of gross sales and unpaid rentals for the years 1970 through 1973 were admitted into evidence. It would serve no useful purpose to summarize in this opinion all of the testimony and exhibits which were presented at the trial. Suffice it to say, following final submission of the case the trial court made extensive findings of fact and conclusions of law finding generally in accordance with the claims of the plaintiff Karnes Enterprises. Judgment was granted to the plaintiff on its petition in the total amount of $24,160.44 and against the defendants on their counterclaim and third-party petition. The defendants Quan then perfected their appeal to this court.

On this appeal the Quans do not question the sufficiency of the evidence to support the findings of the trial court. Only two points of claimed error are asserted. The first point involves the right of the Quans to a jury trial. The second point involves the admission into evidence of certain exhibits offered by the plaintiff which the Quans contend were inadmissible hearsay and were admitted without proper foundation. Although he prevailed in the trial court, Dorrence Karnes, as third-party defendant, filed a cross-appeal.

The Quans' first point on the appeal is that the trial court erred in denying them a jury trial when they were entitled to a trial by jury as a matter of constitutional right. Before considering specifically the facts of this case and the contentions of the parties, it would be helpful to examine the Kansas constitutional provision and the statute governing the right to trial by jury. The right to trial by jury is provided for in Section 5 of the Bill of Rights of the Kansas Constitution which declares:

"§ 5. Trial by jury. The right of trial by jury shall be inviolate."

K. S. A. 60-238 (a) provides a statutory right to trial by jury.

"60-238. Jury trial of right. (a) *Right preserved.* The right of trial by jury as declared by section 5 of the bill of rights in the Kansas constitution, and as given by a statute of the state shall be preserved to the parties inviolate."

Prior to the adoption of our present code of civil procedure effective January 1, 1964, the statutory right to trial by jury was governed by G. S. 1949, 60-2903, which provided in substance that:

"Issues of fact arising in actions for the recovery of money or of specific real or personal property shall be tried by a jury, unless a jury trial is waived . . ."

Down through the years this court has in many decisions interpreted the constitutional and statutory provisions and established certain general principles to be followed by the courts in determining whether a party litigant is entitled to trial by jury. We should examine some of these general principles before considering the specific factual circumstances involved in the case now before us. Some of these guiding principles are the following:

(1) The right of trial by jury is a substantial and valuable right. The law favors trial by jury and the right should be carefully guarded against infringement. (*Bourne v. Atchison, T. & S. F. Rly. Co.*, 209 Kan. 511, 497 P. 2d 110.)

(2) The constitutional right to a jury trial guaranteed by Section 5 of the Bill of Rights of the Constitution of the State of Kansas refers to that right as it existed at common law. (*Craig v. Hamilton*, 213 Kan. 665, 518 P. 2d 539; *Hasty v. Pierpont*, 146 Kan. 517, 72 P. 2d 69.) Judge Spencer A. Gard in Kansas Code of Civil Procedure, § 60-238, in discussing the repeal of former statute G. S. 1949, 60-2903 and in analyzing K. S. A. 60-238 states as follows:

"There is now no general statute defining what issues are triable to a jury as a matter of right and which are not. That question is determinable on the basis of common law tradition as preserved by the Kansas Constitution, section 5 of the Bill of Rights. See Hasty v. Pierpont, 146 K 517, 72 P 2d 69, which discusses the basic principle that under the common law a party was entitled to a jury if the case was based on legal principles as distinguished from actions in equity. Kansas jurisprudence does not seem to have suffered any loss by the repeal of former section 60-2903."

(3) At common law and under the Kansas constitutional provision in a suit in equity a party is not entitled to a trial by jury as a matter of right. (*Spena v. Goffe*, 119 Kan. 831, 241 Pac. 257.)

(4) In determining whether an action is one in equity the test is whether the essential nature of the action is grounded on equitable rights and is one in which equitable relief is sought. (*Akins v. Holmes*, 89 Kan. 812, 133 Pac. 849; *Houston v. Goemann*, 99 Kan. 438, 162 Pac. 271; *Hasty v. Pierpont*, supra; *Sutherland v. Sutherland*, 187 Kan. 599, 358 P. 2d 776; *Hindman v. Shepard*, 205 Kan. 207, 468 P. 2d 103.)

(5) The issues raised by the pleadings or as modified by the pretrial order determine the nature of the action, and where the issue is not one justiciable at common law, a jury trial is not available. (*Craig v. Hamilton*, supra.)

Prior to the adoption of our present code of civil procedure whether or not a party was entitled to a jury trial was determined exclusively from the pleadings. (*Estey v. Holdren,* 126 Kan. 385, 267 Pac. 1098; *Hasty v. Pierpont,* supra; *McCalester v. National Reserve Life Ins. Co.,* 151 Kan. 378, 99 P. 2d 758; *Nusz v. Nusz,* 155 Kan. 699, 127 P. 2d 441; *City of Osawatomie v. Slayman,* 182 Kan. 770, 323 P. 2d 910; *Sutherland v. Sutherland,* supra.) The rule which required a consideration of the pleadings alone was appropriate under our former code of civil procedure where the plaintiff was required to plead in his petition all of the facts constituting his cause of action. Under our present code of civil procedure which requires only "notice" or "claim" pleading, the former rule is not as workable from a practical standpoint. This was recognized in *Craig v. Hamilton,* supra. The rule to be applied today should be one which permits the parties to complete their discovery so that the basic issues involved in the case can be clarified and the essential nature of the action determined at a pretrial conference. It is at that stage of the litigation that the trial court should determine the issue whether a party is entitled to trial by jury as a matter of right.

(6) The substance of the pleadings, not the form of the pleadings, determines the character of an action as equitable or legal in nature. (*Estey v. Holdren,* supra; *Russell v. Bovard,* 153 Kan. 729, 113 P. 2d 1064; *Cloonan v. Goodrich,* 161 Kan. 280, 167 P. 2d 303; *City of Osawatomie v. Slayman,* supra.) The fact that the plaintiff prays for a money judgment only is not controlling where the action is essentially one in equity. (*Sipe v. Taylor,* 133 Kan. 449, 300 Pac. 1076.)

(7) Where a court of equity obtains jurisdiction of an action for the purpose of granting some distinctively equitable relief, the court will take jurisdiction for all purposes and determine all issues in the case so that a full, effective, and determinative decree adjusting the rights of the parties may be entered and enforced. (*Seibert and Lykins v. Thompson,* 8 Kan. 65; *Martin v. Martin,* 44 Kan. 295, 24 Pac. 418; *Sanders v. Visser,* 165 Kan. 336, 194 P. 2d 511; *Place v. Place,* 207 Kan. 734, 486 P. 2d 1354.)

These basic principles have been applied throughout our judicial history. Some of the specific types of actions held to be equitable in nature are the following: quiet title actions, *Farmers State Bank v. Lanning,* 162 Kan. 95, 174 P. 2d 69; actions for specific performance, *Akins v. Holmes,* supra; cancellation of a lease, *Runyan v. Bangs,* 167 Kan. 691, 208 P. 2d 600; creation of a resulting trust with an accounting, *Sipe v. Taylor,* supra; actions to determine the

priority of mortgages and other liens, for an accounting, and to impress liens on real estate, *Fisher v. Rakestraw et al.*, 117 Kan. 441, 232 Pac. 605; bastardy proceedings, *The State, ex rel., v. Herbert*, 96 Kan. 490, 152 Pac. 667; and foreclosure of mortgages, *Federal Land Bank v. Butz*, 156 Kan. 662, 135 P. 2d 883.)

Cases involving requests for an accounting have caused the courts some difficulty. Prior to the pretrial discovery procedures authorized by our present code of civil procedure, in actions to recover a money judgment where the accounting requested was not complicated and was only incidental to the action on the contract this court has required trial by jury. (*McCalester v. National Reserve Life Ins. Co*, supra; *Cloonan v. Goodrich*, supra.) Where, however, the action is primarily one for an accounting and the determination of the factual issues in the case requires a close examination and reconstruction of complicated accounts, the action has usually been determined to be one in equity in which trial by jury is not a matter of right. (*Culbertson v. Cement Co.*, 87 Kan. 529, 125 Pac. 81.) In each instance this court has considered the essential nature of the action to determine whether or not it is one grounded on equitable rights or is one in which equitable relief is sought. (*In re Estate of Johnson*, 176 Kan. 339, 270 P. 2d 293; *Estey v. Holdren*, supra.)

The central issue presented on this appeal is whether the claim of Karnes Enterprises against Mr. and Mrs. Quan is essentially one for equitable relief as the plaintiff contends and as the trial court found, or whether it is one essentially at law for breach of contract as the Quans contend. To determine this issue the trial court was required to examine the pleadings and the fundamental issues raised at the pretrial conference. We have concluded that the trial court did not err in holding that the action was essentially one in equity and that the defendants Quan were not entitled to trial by jury as a matter of right.

Although no Kansas cases directly in point have been brought to our attention, the cases from other jurisdictions support the legal principle that where a lessor is entitled to rent based upon a percentage of the gross sales or profits of the lessee's business, the lessor is entitled to an accounting from the lessee where a dispute arises as to the correctness of the statement of sales or profits submitted by the lessee to the lessor. Typical cases which recognize this rule are the following: *Realty Associates Sec. Corp. v. Whitman Hotel Corp.*, 84 N. Y. S. 2d 878 (1948); *Sweeney v.*

*Happy Valley, Inc.,* 18 Utah 2d 113, 417 P. 2d 126 (1966); *Vess v. Fred Astaire Dance Studios Corporation,* 229 F. 2d 892 (5th Cir. 1956); *H. B. Zachry Co. v. Terry,* 195 F. 2d 185 (5th Cir. 1952); *Blake v. Amreihn,* 67 Ohio App. 201, 36 N. E 2d 797 (1941); *Armstrong v. Gill,* 392 P. 2d 737 (Okla. 1964); *Collesion v. Collesion,* 2 Misc. 2d 10, 154 N. Y. S. 2d 345 (1955). We believe the rule is sound and should be followed in this state.

In this case the petition filed by Karnes Enterprises sought relief not only by way of money judgment but also types of relief which were essentially equitable in nature. At the time the case was filed the Quans were in possession of the restaurant premises. The petition prayed for cancellation of the lease and restoration of the property to the lessor. In addition the plaintiff specifically asked for an accounting of all amounts received by the Quans from the vending machines located on the restaurant premises. It should also be noted that in its demand for a money judgment for rentals due and unpaid the plaintiff requested judgment against the Quans in the sum of $29,857.65 "together with any additional sums Plaintiff may be entitled to from Defendants as rentals . . ." It is obvious that the specific sum mentioned was the minimum estimate of what the plaintiff believed was owed to it by the Quans. When we consider the substance of the allegations set forth in the petition, we arrive at the inescapable conclusion that Karnes Enterprises, Inc. is seeking a full accounting of the gross receipts received by the restaurant business during the period the Quans operated the same. Considering the pleadings, the relationship of the parties, and the contentions of the parties in our judgment the district court did not err in denying to the defendants Quan a trial by jury. The essential nature of the action was one for an accounting grounded on equitable rights, and clearly one in which equitable relief was sought. Since the action was one in equity, the court properly proceeded to determine all issues in the case so as to render complete and final relief to the parties in the controversy.

The second point in the appeal of the Quans is that the trial court erred in admitting into evidence plaintiff's exhibits 1 through 13, because such exhibits were hearsay and no proper foundation was laid for their admission. Exhibits 1 through 6 were a collection of meal tickets which Dorrence Karnes had retrieved from the restaurant trash container over a six-month period in 1973. It is the Quans' position that no evidence was introduced as to who prepared the meal tickets, when they were prepared, and the accuracy

of them. We disagree. The Quans stipulated that it was the practice of the defendant, Mae Quan or the Quans' employees to throw daily sales tickets into the trash container located in the area of the Wheel restaurant. Dorrence Karnes was familiar with the method used in preparing the meal tickets. A meal order was customarily written on the ticket and a total price noted. The ticket was then supposed to be placed in a slot in the cash register and an imprint of the same figure would be mechanically printed on the meal ticket. The tickets were customarily thrown away at the end of each day. This was done because the record of the sale should have been shown on the cash register tape; the meal ticket would then no longer be required. A witness in the employ of the Quans also testified as to this procedure. We hold that sufficient foundation was laid for the admission of exhibits 1 through 6. Under the evidence they were obviously prepared by either the Quans or their employees. Although some of the tickets may have been discarded and possibly subject to error, the weight of such evidence was for the trier of fact to determine. It should be emphasized that many of these meal tickets did not have on them the imprint of the cash register which tended to show that sales were being made at the restaurant which were not properly recorded in the cash register. Such evidence was highly relevant under the issues presented in the pleadings.

Exhibits 7 through 13 were cash register tapes reflecting readings taken from the cash register by Dorrence Karnes during the same period of time the meal tickets were being removed from the trash container. The cash register tapes were clearly admissible. All sales at the restaurant were to be entered on the cash register. There was testimony indicating that the cash register was geared to keep a running total. Dorrence Karnes testified as to the method used to obtain the cash register tapes in order to determine the accuracy of gross sales as shown by the cash register. Under the circumstances of the case there really was no other method by which the contentions of Karnes Enterprises, Inc. could be proved. The Quans had full opportunity to rebut this testimony and we find no error in its admission.

In view of our disposition of this case on the appeal the issues raised in the cross-appeal are moot and it is not necessary to determine the same.

For the reasons set forth above the judgment of the district court is affirmed.